# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |
|---|---|
| **SEARCH AND SHARE TECHNOLOGIES, LLC,** | **Civil Action No.** |
| **Plaintiff,** | **JURY TRIAL DEMAND** |
| **vs.** | |
| **X CORP.,** | |
| **Defendant.** | |

## COMPLAINT

Plaintiff Search and Share Technologies, LLC ("Plaintiff") files this Complaint against Defendant X Corp. ("Defendant" or "X"), and states the follows:

## INTRODUCTION

1.    This lawsuit seeks to stop X Corp.— one of the most powerful and influential technology platforms in the world—from exploiting patented innovatiaons it neither created, owns, nor licensed. In 2011, inventors John Shriber and Roman Zaks developed breakthrough technology that revolutionized how users share information and how search results are generated from real user engagement. Their inventions, protected by U.S. Patent Nos. 10,180,952 and 11,106,744 (the "Patents-in-Suit"), enable users to interact with content through dedicated interfaces and ensure that those interactions directly shape what other users see in ranked feeds and search results.

2.     X has built its flagship platform into a global communications hub by incorporating these very features. X allows its hundreds of millions of users to comment on, like, repost, and share content through interfaces separate from the main display window. Those interactions are collected, indexed, and ranked by X's backend systems, and then surfaced in trending topics, feeds, and search results—exactly as disclosed in the Patents-in-Suit.

3.     X has never sought or obtained a license to this technology. Instead, it has willfully appropriated these patented inventions and embedded them into its core platform, driving massive engagement and revenue while depriving Plaintiff of the exclusivity and value of its intellectual property.

4.     Plaintiff Search and Share Technologies, LLC brings this action to hold X accountable for its ongoing infringement, to recover damages for past violations, and to secure injunctive and other relief necessary to prevent further unlawful use of its patented innovations.

## PARTIES

5.     Plaintiff is a limited liability company organized and existing under the laws of state of Florida, having a principal place of business at 529 West 41st Street, No. 280, Miami Beach, Florida 33140.

6.     Defendant is a corporation organized under the laws of the state of Nevada with its headquarters at 865 FM 1209, Building 2, Bastrop, Texas 78602. Defendant may be served with process through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

7.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.* This Court has subject matter jurisdiction under 28 U.S.C § 1338.

8.      This Court has personal jurisdiction over Defendant because X has committed acts of infringement in this District and has continuous and systematic contacts with this forum. X directly and through subsidiaries or intermediaries has made, used, offered for sale, sold, and imported infringing products and services within this District. Exercising jurisdiction over X in this action comports with due process and traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). X maintains its principal executive offices and headquarters at 865 FM 1209, Building 2, Bastrop, Texas 78602, which lies within the Western District of Texas. From this location, X directs its nationwide operations, develops and deploys the accused products and services, and employs numerous individuals across engineering, product development, legal, operations, and other functions. Accordingly, X has a regular and established place of business in this District and has committed acts of infringement here.

10.     Plaintiff will also call relevant X employees who reside and work in this District to testify at trial.

## FACTUAL ALLEGATIONS

### A. Inventor Background

11.    Long before social media giants dominated the internet, inventors Shriber and Zaks were building the tools that made modern online sharing and discovery possible. In the mid-1990s, Shriber launched Apartment Source, one of the first platforms to list apartments online. That venture grew into "Move On In," a multi-platform network that raised over $60 million and included early innovations in roommate matching, coworking space listings, and online dating.

12.    In 2003, Shriber partnered with Zaks to create Roomster, a global roommate-matching platform that flourishes to this day. Always ahead of the curve, the two inventors set out to solve problems that were novel to the early stages of the internet economy—making online content easier to flip through, easier to share, and easier to find based on what real people actually cared about.

13.    They created the now-ubiquitous "next" interface for browsing listings like flipping pages in a magazine. They invented a one-click "share" button that let users send content without copying long, messy links. And they re-engineered search itself—developing technology that ranks results based on real user engagement, not just static web crawls. This breakthrough became the foundation for the Patents-in-Suit, which cover systems that let a first user interact with content through a separate interface and have those interactions directly influence what a second user sees in search results.

**B. The Patents-in-Suit**

14.    Plaintiff Search and Share Technologies, LLC is the sole assignee of all rights, title, and interest in the '952 Patent and the '744 Patent. The Patents-in-Suit, entitled *"Search Engine"*, were invented by Shriber and Zaks.

15.    The '952 Patent is a continuation of and claims priority to U.S. Patent Application No. 13/420,503, filed March 14, 2012, which claims the benefit of U.S. Provisional Application Ser. No. 61/452,595, filed March 14, 2011.

16.    The '744 Patent is a continuation of U.S. Patent Application No. 15/142,479, filed on April 29, 2016, which is a continuation of and claims priority to U.S. Patent Application No. 13/420,503, filed on March 14, 2012, which issued on May 10, 2016 as U.S. Pat. No. 9,338,215, which claims the benefit of U.S. Provisional Application Ser. No. 61/452,595, filed March 14, 2011.

17.    The Patents-in-Suit address a long-standing flaw in traditional search engines. Conventional systems crawled static links, indexed the located content, and relied on opaque algorithms to rank results—often failing to capture what real users actually found relevant. As explained in both patents, such methods do "not accurately reflect the interest of users on the web." '952 Patent at col. 1, 30–32; '744 Patent at col. 1, 33–35. The Patents-in-Suit resolve this issue by creating a search engine that reflects the interest of users on the web.

18.    The Patents-in-Suit solve this problem by, among other things, creating search systems that dynamically index and rank content based on actual user engagement. The patented methods allow a first user to interact with content through a

user interface separate from the main browser or application window—by commenting, liking, rating, or sharing—and then transmit that interaction to a server. The server indexes and ranks the content based on those interactions. When a second user submits a search query, the server selects and transmits results that directly incorporate the indexed and ranked content from the first user's engagement.



**Fig. 2A**

19.    The '952 Patent discloses, among other things, a method where the system automatically selects and displays a portion of third-party content to a first user in a separate interface, receives that user's interaction, and uses it to index and rank the content for later search queries by other users.

20.    The '744 Patent discloses a method where a first user identifies displayed content through a separate interface, the system indexes it, and a second user's search

retrieves results that include the identified content in a position relative to other user-identified content.

21.    These inventions are now standard features in modern platforms—including X—but remain protected intellectual property. X has never licensed the Patents-in-Suit, yet its core functionality, as described herein, practices the claimed methods in direct violation of Plaintiff's exclusive rights.

## C.  X's Infringing Activities

22.    X is one of the world's most influential social media and communications companies, with hundreds of millions of active users worldwide on its flagship platform. X generates billions of dollars in revenue by enabling users to create, share, and discover digital content enriched with multimedia, reposting, replies, hashtags, and other interactive features.

23.    Central to the success of X—and central to this case—are features that implement the patented methods claimed in the '952 and '744 Patents. X allows a first user to engage with content through interfaces that are separate from the main display window, transmits those interactions to X's servers, and then indexes, ranks, and surfaces that content in trending topics, search results, and personalized feeds for other users.

24.    For example, X infringes the '952 Patent through at least the following features:

- **Separate Interaction Interface** – X's platform provides overlay interfaces (i.e., comment, like, and share panels) that operate independently from the main content display window.



- **Automatic Content Selection –** These overlays display an automatically selected portion of third-party content, such as truncated comments, captions, or preview segments, consistent with the '952 Patent's disclosure.





- **User Submissions Transmitted to Server** – *X*'s platform receives first-user interactions—including likes, comments, shares, and reactions—through these separate interfaces:



- **Indexing and Ranking by Engagement** – *X*'s backend systems index and rank content based on those user interactions, directly mirroring the inventions' purpose of reflecting real user interest:

Case 1:25-cv-01540    Document 1    Filed 09/22/25    Page 10 of 21

> **Social Graph**
>
> Our first approach is to estimate what you would find relevant by analyzing the engagements of people you follow or those with similar interests.
>
> We traverse the graph of engagements and follows to answer the following questions:
>
> - *What Tweets did the people I follow recently engage with?*
> - *Who likes similar Tweets to me, and what else have they recently liked?*
>
> We generate candidate Tweets based on the answers to these questions and rank the resulting Tweets using a logistic regression model. Graph traversals of this type are essential to our Out-of-Network recommendations; we developed GraphJet, a graph processing engine that maintains a real-time interaction graph between users and Tweets, to execute these traversals. While such heuristics for searching the Twitter engagement and follow network have proven useful (these currently serve about 15% of Home Timeline Tweets), embedding space approaches have become the larger source of Out-of-Network Tweets.

- **Search Query Retrieval –** When a second user searches X, or when a second user runs a search query for new third-party content by refreshing their "Feed," the system selects and transmits results that incorporate the indexed and ranked content from prior user engagement, in the manner disclosed in both the '952 Patents.

**PAGE 10 of 21**



25.   X also infringes the '744 Patent through at least the following features:

- **Web Content Sharing Interface**. X's computer systems receive from a first client computer operated by a first user, an identification of web content displayed by a web browser of the first client computer in a main browser window, and that web content is transmitted by the first user to X through a separate user interface:



- **Indexing and Ranking by Engagement –** X's backend systems index and rank content based on those user interactions, directly mirroring the inventions' purpose of reflecting real user interest:



- **Search Query Retrieval** – When a second user searches X, or when a second user runs a search query for new third-party content by refreshing their "Feed," the system selects and transmits results that incorporate the indexed and ranked content from prior user engagement, in the manner disclosed in both the '744 Patents.



26.    X's websites and applications implement the same infringing functionality, allowing users to interact with and identify content through interfaces separate from the primary content display, and enabling those interactions to influence and appear in other users' search results.

27.    X has never sought or obtained a license to the Patents-in-Suit, yet it has built core aspects of its platforms on these inventions. The result is ongoing, unauthorized use of Plaintiff's intellectual property that has caused—and will continue to cause—significant harm to Search and Share Technologies, LLC.

**D. Harm to Plaintiff**

28.    Defendant's infringement of the Patents-in-Suit has caused, and continues to cause, substantial harm to Plaintiff. By incorporating Plaintiff's patented technology into X without authorization, Defendant has:

- Deprived Plaintiff of the ability to control and license its inventions;

- Unjustly enriched themselves by using patented methods to drive user engagement, retention, and monetization; and

- Eroded the exclusivity and market value of the Patents-in-Suit.

29.    Defendants' infringement is not accidental. On information and belief, X has had actual knowledge of the Patents-in-Suit since at least the service of this Complaint, and in all likelihood well before. Despite that knowledge, X has continued to develop, market, and profit from the X platform. The continued use of the patented technology without authorization, particularly given X's size and sophistication, demonstrates willful infringement.

30.    Defendant's continued infringement, despite this knowledge, is deliberate and egregious, rendering this an "exceptional case" within the meaning of 35 U.S.C. § 285 and warranting enhanced damages under 35 U.S.C. § 284.

31.    Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at trial, and is entitled to recover all available legal and equitable remedies, including an injunction against further infringement.

## CLAIMS FOR RELIEF

## COUNT I — Infringement of U.S. Patent No. 10,180,952

32.    Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

33.    Plaintiff is the sole owner, by assignment, of all rights, title, and interest in the '952 Patent, which was duly and legally issued by the United States Patent and Trademark Office on January 15, 2019. Plaintiff has the exclusive right to enforce the '952 Patent and to recover damages for all past, present, and future infringement.

34.    X has directly infringed, and continues to directly infringe, one or more claims of the '952 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and importing into the United States the X platform which incorporates methods and systems claimed in the '952 Patent.

35.    For example, X implements each element of Claim 1 of the '952 Patent, including by:

- Providing a first user interface (comment/share/reaction panels) separate from the main content display;

- Automatically selecting a portion of third-party content to display in that interface;

- Receiving a first user's submission (e.g., like, comment, share) through the interface;

- Indexing and ranking the content based on that submission;

**PAGE 15 of 21**

- Receiving a second user's search query; and

- Selecting and transmitting search results that include the indexed content.

36.    These actions, performed in the United States, satisfy each and every element of at least Claim 1 of the '952 Patent literally and/or under the doctrine of equivalents.

37.    Since at least the service of this Complaint, X has induced infringement under 35 U.S.C. § 271(b) by knowingly encouraging and instructing third parties to use X in a manner that directly infringes the '952 Patent. X provides detailed instructions, documentation, marketing materials, and in-app prompts designed to promote and facilitate infringing use. X's inducement has been willful, knowing, and with the specific intent to cause infringement.

38.    X's infringement is, and has been, willful. On information and belief, X has had knowledge of the '952 Patent and its infringement thereof since at least the service of this Complaint, and likely well before, yet has continued to use Plaintiff's patented technology without authorization. X's conduct is deliberate, egregious, and objectively reckless, rendering this an exceptional case under 35 U.S.C. § 285 and warranting enhanced damages under 35 U.S.C. § 284.

39.    To the extent that X contends it lacked actual knowledge of its infringement of the '952 Patent prior to service of this Complaint, it willfully blinded itself to such infringement by deliberately avoiding investigating Plaintiff's patents or X's infringement.

40.    As a direct and proximate result of X's infringement, Plaintiff has suffered and will continue to suffer substantial damages, in an amount to be determined at trial,

including lost licensing revenue, price erosion, and harm to the value of the Patents-in-Suit. Plaintiff is entitled to all available remedies under the patent laws of the United States, including compensatory damages, enhanced damages, attorney's fees, costs, interest, and injunctive relief.

## <u>COUNT II — Infringement of U.S. Patent No. 11,106,744</u>

41.    Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

42.    Plaintiff is the sole owner, by assignment, of all rights, title, and interest in the '744 Patent, which was duly and legally issued by the United States Patent and Trademark Office on August 31, 2021. Plaintiff has the exclusive right to enforce the '744 Patent and to recover damages for all past, present, and future infringement.

43.    X has directly infringed, and continues to directly infringe, one or more claims of the '744 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and importing into the United States the X platform which incorporates methods and systems claimed in the '744 Patent.

44.    By way of example, X implements each element of Claim 1 of the '744 Patent, including by:

- Receiving from a first user an identification of web content displayed in a main browser or application window;

- Transmitting the identification of web content via a separate user interface;

- Indexing the identified content on X's servers;

- Receiving a search query from a second user; and

**PAGE 17 of 21**

- Transmitting search results that include the identified content in a position relative to other user-identified content.

45.    These actions, performed in the United States, satisfy each and every element of at least Claim 1 of the '744 Patent literally and/or under the doctrine of equivalents.

46.    Since at least the service of this Complaint, X has induced infringement under 35 U.S.C. § 271(b) by knowingly encouraging and instructing third parties to use X in a manner that directly infringes the '744 Patent. X provides detailed instructions, documentation, marketing materials, and in-app prompts designed to promote and facilitate infringing use. X's inducement has been willful, knowing, and with the specific intent to cause infringement.

47.    X's infringement is, and has been, willful. On information and belief, X has had knowledge of the '744 Patent and its infringement thereof since at least the service of this Complaint, and likely well before, yet has continued to use Plaintiff's patented technology without  authorization. X's conduct is deliberate, egregious, and objectively reckless, rendering this an exceptional case under 35 U.S.C. § 285 and warranting enhanced damages under 35 U.S.C. § 284.

48.    To the extent that X contends it lacked actual knowledge of its infringement of the '744 Patent prior to service of this Complaint, it willfully blinded itself to such infringement by deliberately avoiding investigating Plaintiff's patents or X's infringement.

49.    As a direct and proximate result of X's infringement, Plaintiff has suffered and will continue to suffer substantial damages, in an amount to be determined at trial,

including lost licensing revenue, price erosion, and harm to the value of the Patents-in-Suit. Plaintiff is entitled to all available remedies under the patent laws of the United States, including compensatory damages, enhanced damages, attorney's fees, costs, interest, and injunctive relief.

### PRAYER FOR RELIEF

WHEREFORE, Search and Share respectfully requests that this Court enter judgment in its favor ordering, finding, declaring, and/or awarding Search and Share relief as follows:

    a. that X infringes the Patents-in-Suit;

    b. all equitable relief the Court deems just and proper as a result of X's infringement;

    c. an award of damages resulting from X's acts of infringement in accordance with 35 U.S.C. § 284;

    d. that X's infringement of the Patents-in-Suit is willful;

    e. enhanced damages pursuant to 35 U.S.C. § 284;

    f. that this is an exceptional case and awarding X its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

    g. an accounting for acts of infringement and supplemental damages, without limitation, prejudgment and post-judgment interest; and

    h. such other equitable relief which may be requested and to which Plaintiff is entitled.

Dated: September 22, 2025                    Respectfully Submitted,


                                            */s/ Christopher J. Schwegmann*
                                            Christopher J. Schwegmann
                                            Texas Bar No. 24051315
                                            **LYNN PINKER HURST & SCHWEGMANN, LLP**
                                            2100 Ross Avenue, Suite 2700
                                            Dallas, Texas 75201
                                            Telephone: 214-981-3800
                                            Facsimile: 214-981-3839
                                            cschwegmann@lynnllp.com

                                            Kyle W. Roche *(Pro Hac Vice Forthcoming)*
                                            Edward Normand *(Pro Hac Vice Forthcoming)*
                                            Joseph M. Delich, Esq. *(Pro Hac Vice Forthcoming)*
                                            **FREEDMAN NORMAND FRIEDLAND LLP**
                                            10 Grand Central
                                            155 E. 44th Street, Suite 915
                                            New York, New York 10017
                                            Telephone: (646) 970-7541
                                            kroche@fnf.law
                                            tnormand@fnf.law
                                            jdelich@fnf.law

                                            Velvel Freedman *(Pro Hac Vice Forthcoming)*
                                            Niraj Thakker *(Pro Hac Vice Forthcoming)*
                                            1 SE 3rd Avenue, Suite 1240
                                            Miami, Florida 33131
                                            Telephone: (305) 306-9211
                                            vel@fnf.law
                                            nthakker@fnf.law

                                            Jason G. Sheasby *(Pro Hac Vice Forthcoming)*
                                            Tony Rowles *(Pro Hac Vice Forthcoming)*
                                            **IRELL & MANELLA LLP**
                                            1800 Avenue of the Stars, Suite 900
                                            Los Angeles, California 90067
                                            Tel: (310) 203-7096
                                            jsheasby@irell.com
                                            trowles@irell.com

**ATTORNEYS FOR PLAINTIFF**
**SEARCH AND SEARCH TECHNOLOGIES,**
**LLC**